UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GEORGE AIELLO,                          :
    PLAINTIFF,                       :
                          : CIVIL ACTION NO. 3:09cv1161(VLB)
                          :
    v.                               : AUGUST 8, 2011
                          :
STAMFORD HOSPITAL,                       :
    DEFENDANT.                       :

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S [DOC. #46] MOTION FOR SUMMARY JUDGMENT

Before the Court is a motion for summary judgment filed by the Defendant, Stamford Hospital (the "Hospital"). The Plaintiff, George Aiello ("Aiello"), brought this suit alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a) *et seq.* In particular, Aiello alleges that Defendant in connection with his employment and subsequent termination discriminated against him on the basis of his gender and age, retaliated against him when he complained of such discrimination, and created a hostile work environment. In addition, Aiello asserts a cause of action for intentional infliction of emotional distress. Lastly Aiello alleges that the "defendant, inter alia, failed, refused or neglected to supervise, train, instruct, monitor, adequately screen, hire or otherwise direct its agents, officers or employees regarding the plaintiff; to protect the plaintiff from the negligent, reckless, intentional or tortious acts of its agents, officers or employees; and by and through other acts and omissions

failed, refused or neglected to fulfil its duties to the plaintiff." [Doc. # 38, Amended Complaint]. For the reasons stated hereafter, Defendant's motion for summary judgment is granted.

## Procedural Background and Facts

Aiello filed his original complaint on July 22, 2009 with the Court which Defendant moved to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In particular, Defendant argued that Plaintiff's pleadings did not satisfy *Iqbal v. Ashcroft*'s plausibility requirement and that several of Plaintiff's claims regarding Defendant's actions were untimely as under Title VII and the ADEA one must file a charge within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e) (2009); 29 U.S.C. §§ 636(d)(2), 633(b) (2009); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on November 17, 2008. On September 29, 2010, the Court granted Defendant's motion to dismiss without prejudice to the filing of an amended complaint that contained sufficient factual pleadings. [Doc. #37]. In addition, the Court held that "any claims of discrete acts of discrimination outside the statutory period, including the discipline that allegedly occurred in March 2006 and November 2007, are barred as untimely." [*Id.* at 7]. On October 14, 2010, Plaintiff filed an amended complaint which included claims for discrimination based on acts outside the statutory period. [Doc. # 38].

The following facts relevant to Defendant's motion for summary judgment are undisputed unless otherwise noted. Aiello, a white male born January 18, 1943, was employed with the Stamford Hospital as a radiology technologist in the Diagnostic Radiology Department. [Doc. #47]. Aiello was hired in May 1988 as a per diem radiology technologist and two months later was hired as a full-time technologist and has worked full time at the Hospital until his termination on May 14, 2008. [*Id.*]. Aiello also worked part time at Norwalk Hospital from 1987 to 2007. Beginning in 2007, Aiello worked full time at both the Stamford Hospital and the Norwalk Hospital. At the time of Aiello's termination, there were eight females and ten males employed as regular full time and part time radiology technologists in the Department and three radiology technologists in the department were over the age of 55. [*Id.*].

Aiello was supervised by Marjory Vidulich[1], age 51, the Administrative Chief of Imagining since 2004. Vidulich reported to David Sack, age 65, who was the Director of Radiology and has been employed by the Hospital since April 2004. Katie Macari, age 31, was the Lead Technologist and reported to Vidulich. Macari scheduled employees and authorized overtime. [*Id.*].

Aiello alleges that the sixty-five year old Sack would frequently call him "Old Man" and ask him "you going to retire soon?" [Doc. #56, Aiello Dep. at 96,99]. Aiello also alleges that Sack told him he was getting heavy and would routinely push on plaintiff's stomach with his hands. [Doc. #56]. In addition, Aiello alleges in his unverified amended complaint that Sack openly stated to

---

[1] Marjory Vidulich is referred to in Plaintiff's pleadings as Jory Betts.

Aiello that he wanted Aiello to leave employment with defendant so that he could work with a younger woman. [Doc. #56 and Doc. #37]. However, in his deposition testimony Aiello responded to the question "what did David Sack say to you that leads you to state that he wanted somebody younger?" that "[h]e was always looking for younger people. Always wanted to hire students. They didn't have slots, so they had to create slots to hire people." [Doc. #56, Aiello Dep. at 101]. In addition, in response to the question "what makes you think that David Sack wanted to either fire you or force you to quit because you're a male," Aiello testified, "[b]ecause I'm a male and I was making money, and he could hire someone younger and cheaper." [*Id.*].

Aiello also alleges in his unverified amended complaint that Vidulich wanted him to leave the employ of defendant so that she could hire younger female employees and that she wanted to terminate the Plaintiff because of his age and gender. [Doc. #38]. In his deposition testimony, Aiello was asked to tell every reason why he believed Vidulich wanted to terminate him because of his age and responded that "she wanted younger people in the department." [Doc. #56, Aiello Dep. at 100-112]. When asked to tell every reason why Aiello believed Vidulich wanted him terminated because he was a male, Aiello testified "because she wanted younger people, male and female, mostly female, there instead of men" and that "she was a divorced woman. She hated men… she just hated men in general, you know. She's bitter." [*Id.*]. Aiello was also asked "what makes you think that her picking on you was because you're a male?" and testified in response "because she didn't pick on the ladies." [*Id.*].

In 2002, Aiello received an Employee Handbook, which contained the Hospital's policies including the Standards of Behavior, Guide to Disciplinary Action, Sexual Harassment Policy; and Employee Problem Review and Appeal Policy. [Doc. #47]. The Handbook was updated in 2006 and all employees including Aiello received the revised Handbook. Since 1995, the Handbook was available on the Hospital's shared computer drive to which all employees have access. [*Id.*].

The Hospital's Sexual Harassment Policy instructs employees "who feel they have been a victim of discriminatory treatment or harassment of any kind" to contact the Director of Human Resources or a Human Resources Partner. [Doc. #47]. The Hospital's Sexual Harassment Policy also encourages employees to report any harassment to their direct supervisor. In addition, the policy is available in an online training course and available on the Hospital's shared computer drive. The Hospital maintains an Employee Problem Review and Appeal Policy which is a dispute resolution process for employees to assist with resolution of work related conflicts. [*Id.*]. The Hospital's Employee Problem Review and Appeal Policy sets forth four steps which culminate in the employee either presenting his/her work-related conflict to the Vice-President/Senior Vice President of his/her division or referring the conflict to a Peer Review Panel. [*Id.*].

The Hospital's disciplinary policy is set forth in its Employee Handbook in a section entitled "Guide to Disciplinary Action." [Doc. #48, Ex. B at 1-15]. According to the policy, disciplinary action may take the form of a verbal or written warning, suspension, reassignment or termination. [*Id.*]. Disciplinary actions shall be generally considered in making employment decisions for a one-year period. The Policy further states that "any three disciplinary actions in a one-year period, with the exception of Verbal Warnings, may be grounds for dismissal." [*Id.* at 14]. The Guide to Disciplinary Action provides a legend that identified the usual course of action for the more common causes of discipline. It sets forth four classes of infractions with Class I as the least serious and Class IV as the most serious. The legend provides that "inappropriate treatment of customers," failure to meet or maintain acceptable job performance," "inappropriate conduct," and "sleeping or loafing on duty" are Class III infractions. The legend provides that "leaving work area without permission," and "failure to properly record time worked" are Class II infractions. [*Id.* at 15]. Class IV infractions for which an employee may be terminated include "deliberate falsification of time worked records," "theft," and "failure to follow a direct order." [*Id.* at 16]. In addition, it provides that "excessive unplanned absenteeism/ tardiness" which is defined as "two unplanned absences in one month or two incidents of tardiness in one week or a combination of one absence and two incidents in one month" or that "[v]iolations may also occur when the manager considers the frequency and pattern of absences to be unreasonable or when absence or tardiness is otherwise abusive." [*Id.* at 15]. The Employee

Handbook further provides that "this employee handbook is not an employment contract between you and Stamford Hospital. Employment relationships with Stamford Hospital are on an at-will basis. This means you and Stamford Hospital have a right to terminate your employment with or without cause." [*Id.* at 12]. The Hospital alleges that after a Class IV infraction, the usual course of action is immediate termination. [Doc. #47]. In addition, the Hospital alleges that it routinely terminates employees who either have received three written warnings within a one-year period or received two class III infractions within a one-year period. [Doc. # 47].

On March 17, 2006, Aiello was disciplined for failure to comply with the Hospital's time recording policies on March 2, 2006 and March 11, 2006 (the "March 2006 Discipline"). [Doc. #47]. Aiello alleged that the Hospital disciplined him in a manner more severe than similarly situated employees who were not the plaintiff's age and/or gender and that other staff members who were not the plaintiff's age, or gender, or both were not disciplined for similar conduct. [Doc. #56]. In addition, Aiello alleges that Vidulich harassed him when she and Amy Haskell called his home on a Sunday to discuss the incidents that led to the March 2006 Discipline. [Doc. #56, Aiello Dep. at 62-70]. Aiello alleges that younger and female employees were not so harassed. In Aiello's deposition testimony concerning the phone call, Aiello testified that they called to discuss him working "excessive hours" and that he considered it harassing because they called "on a Sunday morning? It couldn't wait 'til Monday when I went to work." [*Id.*]. Further, when Aiello was asked, "[d]o you believe that this call on Sunday

by Amy and Jory to discuss your schedule, how [does] it relate to your age?"
Aiello testified "because maybe they were worried that I was too old to do that
hours." Aiello was then asked "so you're speculating that maybe—" he
responded "I don't know. Or they were just picking on me. I don't know." [*Id.*].
Aiello admitted in his deposition that he did not recall if Vidulich or Haskell had
said "anything in that call about [his] age." [*Id.*].

Aiello alleges that "defendant routinely deprived the plaintiff of overtime
assignments" and that "defendant gave overtime to younger and female
employees." [Doc. #56]. In particular, Aiello identifies the following employees
who were favored in connection with overtime as Robert Tuminski who is male
and born in 1979, Mihn Phan who is male and born in 1977, Daniel DePalma \ who
is male and younger than Aiello, Laura Martinelli who is female and born in 1965,
Charlotte Kane who is female and was born in 1948, Denise Johnson who is
female and 63 years old at the time, Liliana Jacku who is female and born in 1972,
Denise Ambruso who is female and born in 1953, and Riley Woods who Aiello
alleges was either younger, female or both. [Doc. #56]. Sometime in or before
2006, Aiello testified that he verbally complained to Macari that she was giving
overtime to her "friends" and that "if she didn't change I was going to go to the
labor Department…just giv[ing] [overtime] to younger people in the department."
[Doc. #56, Aiello Dep. at 24-25]. Aiello alleges that afterward overtime was
distributed fairly for only a period of two weeks. [*Id.*].

In fiscal years 2005 and 2006, Aiello worked 236.43 and 250.82 overtime
hours respectively, the second most hours in the department each year. In fiscal

year 2007, when Aiello was also working full time at Norwalk Hospital, he worked 117 overtime hours, the sixth highest in a department of fourteen regular full time and part time radiology technologists. [Doc. # 47]. During that same year, Aiello took a leave of absence from the Hospital from July 27, 2007 to September 17, 2007. In fiscal year 2007, two males Pham and Tuminski, worked more overtime than Aiello. Radiology technologists, including Aiello, also worked "on-call" hours and for those hours they are paid to "carry the beeper" and must be available to report to work if necessary. [*Id.*]. Aiello alleges that "the reason he had a large amount of overtime hours during two of his twenty years of employment with the defendant was because he took a lot of OR call and not because he was assigned overtime in the Radiology Department." [Doc. # 56].

The Hospital conducts annual performance ratings of employees and rates employees as "Does Not Meet," "Meets," or "Exceeds" expectations. [Doc. #47]. According to Hospital policy, employees who receive a "Does Not Meet" expectation rating are not eligible for the Hospital-wide salary increase. Vidulich has given Aiello a "Meets" expectation rating every year except for 2006 when he received a "Does Not Meet" expectation rating. As a consequence, Aiello did not receive the salary increase in 2006. In 2007, Aiello was given a "Meets" expectation rating and received the hospital wide salary increase. [*Id.*]. Aiello alleges that after his complaint regarding overtime hours, Defendant "downgraded his performance reviews so that he would not receive pay raises which he deserved" and that at "the same time, the defendant gave younger or

female employees higher reviews so that they would receive greater raises than the plaintiff." [Doc. #56].

In addition, Aiello alleges that he was required to punch in his time while other employees, younger and female or both were permitted to write their times by hand. [Doc. #56]. Defendant alleges that Vidulich directed Aiello to punch in his time as a result of issues that had arisen regarding whether Aiello's written in time accurately reflected his time worked. [Doc. #47]. Approximately a month later, Vidulich required all employees in Diagnostic Radiology to punch their time cards. [*Id.*]. In 2008, the Hospital replaced the traditional punch clock with a biometric system which reads employees' finger scans. [*Id.*].

On November 20, 2007, Aiello received a Class III written warning for "failure to meet or maintain an acceptable job performance standards" when he imaged a patient without registering the patient or having a script to perform the exam (the "November 2007 Class III Written Warning"). [Doc. #47]. Aiello alleges that he was ordered by a physician to image the patient and that he was required to comply with the physician's order. [Doc. #56]. Defendant alleges that prior to November 2007, Aiello had been informed that all patients must be registered or that employees must have a script prior to imaging the patient. [Doc. #47]. Aiello alleges that the Hospital did not discipline similarly situated individuals for the same conduct who were not the plaintiff's age, or gender or both. In particular, Aiello identifies the similarly situated individuals as Denise Johnson who is female and 63 years old, Charlotte Kane who is female and was born in 1948, Laura Martinelli who is female and born in 1965, Yolanda Crenshaw who is

female, Robert Tuminski who is male and born in 1979, Mihn Phan who is male and born in 1977, and Daniel DePalma who is male.  In his deposition, Aiello testified that management was not aware that these individuals who he identified as similarly situated had engaged in the same conduct of imaging a patient without registering.  [Doc. #56, Aiello Dep. at 113-125].

On May 12, 2008, Aiello received a Class II written warning because he failed to "properly record time worked" on April 27, 2008 (the "May 12, 2008 Class II Written Warning").  On April 27, Aiello was scheduled to work from 8:00am to 4:00pm, but left work round 1:15pm but wrote down that he left at 4:00pm.  Aiello alleges that the Hospital did not discipline similarly situated individuals for the same conduct who were not the plaintiff's age, or gender or both.  In particular, Aiello identifies the similarly situated individuals as Laura Martinelli who is female and born in 1965, Robert Tuminksi who is male and born in 1979, Mihn Phan who is male and born in 1977, Charlotte Kane who is female and was born in 1948, and Katie Macari who is female and age 31 at the time. [Doc. #56 and Doc. # 38].  .  In his deposition, Aiello testified that management was not aware that these individuals who he identified as similarly situated had engaged in the same conduct of improperly recording time worked.  [Doc. #56, Aiello Dep. at 121-125].

On May 14, 2008, Aiello received a Class III written warning for "failure to meet or maintain acceptable job performance" for his conduct on May 11, 2008 and was terminated (the "May 14, 2008 Class III Written Warning").  [Doc. #47].  On May 11, 2008, Minh Pham, another radiology technologist and colleague of Aiello was in an examination room when he noticed a patient to be x-rayed had

passed out. Around 12:18pm, Pham requested Aiello to call a "code" and get a doctor from the Emergency Department. Calling a "code" indicates a patient is in cardiac distress and is very serious. Aiello called an alert, which is less serious than a code and indicates that a patient is non-responsive but has a pulse. Aiello left the room and encountered Dr. Vanessa Brown and informed her that a patient had passed out. Pham spoke with Vidulich that same day regarding what he considered to be an inappropriate response by Aiello and filed an incident report. As a result of the incident report, Cindy DeMuro, age 47, Senior Human Resources Partner at the Hospital, led an investigation into the events of May 11, 2008. DeMuro and Vidulich interviewed all individuals involved in the incident. During their interview of Aiello, he admitted that he left the room to retrieve smelling salts and not to immediately find a doctor. [*Id.*]. DeMuro and Vidulich concluded that Aiello's conduct warranted a Class III written warning. He further admitted that he only informed Brown because he happened to encounter her. Aiello alleges that his conduct was not inappropriate and therefore the Class III written warning was unwarranted. [Doc. #56].

As a result of the issuance of the Class III written warning on May 14, 2008, Aiello had received one Class II written warning and two Class III written warnings in a one year period from November 2007 to May 2008. Defendant alleged that according to routine hospital practice, DeMuro and Vidulich made the decision to terminate Aiello's employment. [Doc. #47]. The Hospital hired Carl Laguzzi, then a 32 year-old male and a graduate of its onsite radiology school, to fill the vacancy caused by Aiello's termination. [*Id.*]. Aiello alleges in his unverified

amended complaint that "no employee of defendant in the radiology department has been terminated for not calling an appropriate code team in a timely manner" and "that during the entire time of the plaintiff's employment with defendant, no other employee in the radiology department has been terminated by the defendant for performance issues." [Doc. #38]. Aiello also alleges that "two other employees of the defendant, ultrasound technicians, received two Class Three disciplinary actions in one year, as the plaintiff had, yet they were not terminated, as was the plaintiffs. The two employees were 26-27 years old and 35-38 years old." [Doc. #56]. However, Aiello testified in his deposition that he did not know for a fact if these two individuals had actually received such discipline but was merely "speculating." [Doc. #56, Aiello Dep. at 126-127]. In particular, Aiello testified that "I'm sure they received them warnings … I don't know for a fact, but they were bad." When asked "do you know if they received any class 3 warnings," Aiello responded "[n]ot to my knowledge. But for what they did they must have." Aiello was then asked "If they must have, you don't know if they received two within one year," to which it he replied "no." [*Id.*].

Aiello also alleges in his unverified amended complaint that he "was terminated six days prior to having been employed by the defendant for twenty years." [Doc. #56 and Doc. #38]. In addition, Aiello alleges that Defendant considered "plaintiff's 'normal retirement' date to have been February 1, 2008, which date had passed when the plaintiff was terminated." [*Id.*]. Aiello alleges that the implication of this date "was that [defendant] believe that the plaintiff should have retired by that date, and was too old to continue working." [Doc.

#56]. Aiello also alleged that by working to this date, the "plaintiff would have been entitled to additional benefits." [*Id.*]. Defendants dispute this account and point out by working past this date Aiello obtained whatever benefits he was entitled to. In his deposition testimony, Aiello testified that it was Vidulich and Sack who considered that February 1, 2008 to be his normal retirement date. However, when asked if he had discussed the date with Vidulich or Sack, Aiello testified that he could not recall if he had a discussion and that "I just can't recall at this time why that date stuck in my head." [Doc. #56, Aiello Dep. at 185-188].

Lastly, Aiello alleges that he was subjected to a hostile work environment. In particular he alleges that his younger male co-worker Mihn Phan repeatedly called him "old man" several times a week and told stories about him. [Doc. #56, Aiello Dep. at 78-79]. Aiello also alleges that Phan wanted "younger people to work with him." [*Id.*]. In addition, Aiello claims that Hospital employees frequently called him "the Old Man" and would draw offensive pictures aimed at him and leave these pictures out in the communal workspace. [Doc. #56]. Aiello identifies two specific offensive drawings or pictures. One drawing was of an older man looking through a pair of legs and was referred to as "George's Peephole." [Doc. #56]. The second picture was of a man having sexual intercourse with a donkey. While Aiello alleges in his unverified amended complaint that Phan had written his name on the donkey picture, Aiello in his deposition testified that he did not recall if his name was written on the donkey picture or not. [Doc. #56, Aiello Dep. at 80-84]. In connection with such drawings and pictures, Aiello alleges that employees would tell him "there you are on the

wall, that's what old men do" or "this is going to happen to you because you are old." [Doc. #56]. Aiello also testified in his deposition that there were just a couple of these offensive drawings or pictures made over a period of "years." [Doc. #56, Aiello Dep. at 80-84]. Aiello further alleges that employees would post pornographic material and directed him to view the images knowing it disturbed him. [Doc. #56]. Aiello also testified that a co-worker named Ron had called him "old person" or "old man" just a "couple of times" and further specified that it was maybe five or ten times in a "six year period." [Doc. #56, Aiello Dep. at 93-94]. Aiello admitted in his deposition testimony that he had never complained of any of this conduct to management. [Doc. #56, Aiello Dep. at 112].

Aiello alleges in his unverified amended complaint that he frequently complained about the harassing and discriminatory behavior he experienced. However, in his deposition testimony, Aiello admits to only complaining twice to management. As noted above, he complained to Macari verbally in 2006 regarding distribution of overtime. He also testified that he complained about 15 or 16 years ago when the Hospital tried to move his shift start time by an hour. [Doc. #56, Aiello Dep. at 128-131]. He testified that "I filled out a paper. They demanded. I filled out a paper. There was like a grievance committee, a grievance form. We had a grievance thing and we split the difference." [*Id.*]. Ultimately, the Hospital and Aiello agreed to move his start time by only half an hour in a compromise. Aiello further testified at his deposition that beyond these two informal complaints, he never complained to any member of management concerning any discriminatory treatment. [*Id.* at 130-131].

In his unverified amended complaint, Aiello alleges:

"defendant, inter alia, failed, refused or neglected to supervise, train, instruct, monitor, adequately screen, hire or otherwise direct its agents, officers or employees regarding the plaintiff; to protect the plaintiff from the negligent, reckless, intentional or tortious acts of its agents, officers or employees; and by and through other acts and omissions failed, refused or neglected to fulfil its duties to the plaintiff."

[Doc. #38]. The Court presumes this is a claim sounding in failure to train. Aiello's Local Rule 56(a)(2) statement and his response to the motion for summary judgment is devoid of any facts pertaining to Defendant's training conduct, practices or policies aside from the generalized allegations of the complaint. [Doc. #56, attachments 1 and 2]. The Court deems this claim abandoned. *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003).

## Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.*, (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-

moving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).

The Court further notes that on a motion opposing summary judgment citations to an unverified amended complaint are insufficient under Fed. R. Civ. P. 56 (c) to create an issue of disputed fact. *Continental Ins. Co. v. Atlantic Cas. Ins. Co.*,No.07civ.3635, 2009 WL 1564144, at *1 n.1 (S.D.N.Y. June 4, 2009); *Afroze Textile Inds. (Private) LTD v. Ultimate Apparel, Inc.*, No.07-cv-3663, 2009 WL 2167839, at *3 n. 15 (E.D.N.Y. July 20, 2009). "A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch-Rubin v. Sandals Corp.*, No.3:03cv481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted). Plaintiff in his disputed issues of material fact section of his Local Rule 56(a)2 statement has repeatedly cited to the unverified amended complaint and in several instances Plaintiff has put forth disputed issues of material fact that are supported solely by citation to the unverified amended complaint. Where Plaintiff has done so, he cannot create an issue of disputed fact. Furthermore, Plaintiff's amended complaint is not verified as it bears only the signature of Aiello's counsel, not the signature of Aiello himself, and Aiello's counsel does not attest

to any "personal knowledge" of the amended complaint's accusations. Personal knowledge is required under Fed. R. Civ. P. 56(c) in connection with an affidavit or declaration used to support or oppose a motion for summary judgment. *Alleva v. New York City Dept. of Investigation*, 696 F. Supp. 2d 273, 278-279 (E.D.N.Y. 2010).

<u>Analysis of Time Barred Claims</u>

Title VII and the ADEA require a claimant to file a discrimination charge with the EEOC within 180 days of the alleged unlawful employment action or, if claimant has already filed a charge with state or local equal employment agency, within 300 days of alleged act of discrimination. Age Discrimination in Employment Act of 1967, § 7(d)(2), 29 U.S.C.A. § 626(d)(2); Civil Rights Act of 1964, § 706(e), 42 U.S.C.A. § 2000e-5(e). In addition, the statute of limitations under CFEPA requires that a complaint be filed within 180 days of the unlawful employment action. Conn. Gen. Stat. § 46a-82(f). There is one exception to these limitations period for continuing violations. While Plaintiff styles his allegations as an on-going pattern of harassment, retaliation and disparate treatment, Plaintiff's allegations mainly center on discrete acts. The Supreme Court in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002), clarified "what types of discriminatory acts amount to a pattern or policy that triggers the continuing violation doctrine." *Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 526 (S.D.N.Y. 2002). The Supreme Court concluded that:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each

retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." [A plaintiff] can only file a charge to cover discrete acts that "occurred" within the appropriate time period . . . Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts.

536 U.S. at 114-15 (internal citations omitted).

As this Court already ruled in its decision on the motion to dismiss, since Plaintiff filed his complaint with the CHRO on November 17, 2008, his claims in connection with the March 2006 Discipline and the November 2007 Class III Written Warning are untimely as they are discrete acts which occurred on a particular day. [Doc.# 37]. In addition, Plaintiff's claim that he was denied a salary increase as a result of being downgraded in his performance review in 2006 is likewise time barred as Plaintiff received a performance review on a specific date and was denied a salary increase in a specific year. Here, the undisputed facts establish that Aiello was denied a salary increase as a result of a "Does Not Meet" expectation rating in 2006 and that in 2007 he received a "Meets" expectation rating and the salary increase. [Doc. # 47]. Accordingly, these claims are time barred.

Analysis of Title VII Employment Discrimination Claim

Plaintiff alleges that Defendant discriminated against him on the basis of his gender. Under Title VII, Plaintiff's claims of discriminatory treatment are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp., v. Green*, 411 U.S. 792, 802 (1973). The *McDonnell Douglas* standard

requires that Plaintiff establish a *prima facie* case of discrimination by showing that (1) he is part of a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action and (4) that the circumstances surrounding the employment action give rise to an inference of discrimination. *Id.* The Second Circuit has noted that the burden to establish a *prima facie* case is "minimal" or "de minimis." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

If Plaintiff can establish a *prima facie* case, the burden shifts to the Defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell*, 411 U.S. at 802. As this stage, Defendants need only proffer, not prove, the existence of a nondiscriminatory reason for their employment decision. *See Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (internal quotations omitted).

If Defendant meets its burden of production, the burden shifts back to Plaintiff to show that the legitimate, nondiscriminatory reason offered by the Defendant is mere pretext for illegal employment discrimination. *McDonnell*, 411 U.S. at 804. "Although the intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

Here, it is undisputed that Aiello is a male and therefore a member of a protected class. Defendant argues that Aiello has failed to establish that he was qualified for his position and point to the disciplinary actions that Aiello had received over his last year of his employment and in particular the events surrounding the May 14, 2008 Class III Written Warning as evidence that he was not qualified for the position. However, there is sufficient evidence in the record when viewing the facts in the light most favorable to the non-moving party that Aiello was qualified for his position. Aiello had worked at the hospital since 1988 and had received a "Meets" expectations rating every year except in 2006 and therefore Aiello has presented enough evidence to meet his de minimis burden to demonstrate that he was qualified for his position.

                i.      **Analysis of Whether Aiello Suffered an Adverse Employment Action**

In his amended complaint, Aiello has alleged seven grievances against the Hospital. As explained above, Aiello's claims in connection with the March 2006 Discipline, the November 2007 Class III Written Warning, and the 2006 denial of a salary increase are time barred. The remaining four grievances are his allegations that (1) that he was required to punch in time; (2) he was denied overtime; (3) the May 12, 2008 Class II Written Warning; and (4) the May 14, 2008 Class III Written Warning and termination. The Court will examine each grievance in turn to determine whether they qualify as an adverse employment action.

The Second Circuit has held that for conduct to constitute an adverse employment action, it must be a "materially adverse change in the terms and conditions of employment." *Galabaya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Aiello alleges that he was required to punch in his time while other employees, younger and female or both were permitted to write their times by hand. [Doc. #56]. Aiello has put forth no explanation or evidence of how the fact that he was required to punch in his time was a materially adverse change in the terms and conditions of his employment. Aiello has presented no evidence demonstrating that a term or a condition of his employment included his ability to write in time by hand as opposed to punching it in. In addition, Aiello has not demonstrated how punching in his time was materially adverse to him as he has not shown that he lost income or benefits or that his job duties or title were altered as a result of being required to punch in time. Moreover, it appears from the record of evidence that Aiello was only required to punch in time after he had been repeatedly reprimanded for incorrectly recording his time on prior occasions. Finally, shortly after he was required to punch in his time, Defendant required all employees to punch in their time. Accordingly, the Court finds that Plaintiff has failed to present a *prima facie* case in connection with his claim that Defendant discriminatorily required him to punch in his time.

Aiello next claims he was discriminatorily denied overtime. Courts in the Second Circuit have recognized that the denial of overtime may constitute an adverse employment action in some circumstances. *Turley v. ISG Lackawanna, Inc.*, No.06-cv-794S, 2011 WL 1104270, at *9-10 (W.D.N.Y. March 23, 2011) (noting

that a plaintiff could be subject to an adverse employment action where he produced evidence that he incurred an actual loss in income or where he lost opportunities for earning overtime benefits which resulted in alteration of his title or job duties); *Suarez v. American Stevedoring, Inc.*, No.06-cv-6721, 2009 WL 3762686, at *12 (E.D.N.Y. Nov. 10, 2009) (noting that the denial of overtime opportunities can constitute an adverse employment action in circumstances where it "it bears on either plaintiff's opportunities for professional growth and career advancement or directly on plaintiff's compensation" and "[w]here, however, a plaintiff cannot establish material harm from such denials, there is no adverse employment action") (citations omitted).

Here, Aiello has not presented sufficient evidence demonstrating that he was actually treated unfairly in the distribution of overtime and that denial of overtime resulted in material harm to his professional growth or career advancement. First, conclusory allegations that the Hospital distributed overtime in a discriminatory way are not sufficient to support Aiello's claim. *See Matires v. Connecticut Dept. of Transp.*, 596 F. Supp. 2d 425, 440 (D. Conn. 2009) (finding that plaintiff "has not presented evidence to support her claim [regarding opportunity to work overtime], other than her own conclusory statements"). Second, it is undisputed that in fiscal years 2005 and 2006, Aiello worked 236.43 and 250.82 overtime hours respectively, the second most hours in the department each year while Aiello was also working part time at Norwalk Hospital. In fiscal year 2007, when Aiello was also working full time at Norwalk Hospital, he worked 117 overtime hours, the sixth highest in a department of fourteen regular full time

and part time radiology technologists. [Doc. # 47]. During that same year, Aiello took a leave of absence from the Hospital from July 27, 2007 to September 17, 2007. [*Id.*]. Considering that Aiello did receive a large amount of overtime and the fact that Aiello also worked a significant amount of hours at the Norwalk Hospital it is unclear how Aiello would have been able to obtain that much overtime if overtime was discriminatorily distributed as he alleges.

Aiello attempts to explain away these undisputed facts by saying that he "took a lot of OR call and not because he was assigned overtime in the Radiology Department." [Doc. # 56]. However, Aiello does not explain why obtaining overtime through OR call was materially different than being assigned overtime in the Radiology Department nor does he present evidence that the denial to obtain overtime in the Radiology Department as opposed to OR call materially harmed his professional growth or career advancement.

Aiello has not provided specific evidence of disparate treatment in the assignment of overtime work. *Ramsey v. New York City Health & Hospitals Corp.*, No.98CIV.1594, 2000 WL 713045, at *7 (S.D.N.Y. June 2, 2000) ("Considering that there is evidence that plaintiff made more money from overtime work than most other maintenance workers, the fact that an overtime job may have on various occasions been taken away from plaintiff and given to another maintenance worker is not evidence of a discriminatory employment practice adverse to plaintiff for purposes of his disparate treatment claim."); *Turley*, 2011 WL 1104270, at *9 ("However, Plaintiff has not presented sufficient evidence that he has been treated unfavorably in the distribution of overtime work. It is clear

that Plaintiff received overtime assignments in the Pickler Department continuously from 2003 through 2008. In fact, he often placed among the top half of employees for overtime hours worked.  Since Plaintiff argues he was denied overtime before work, after work, and on the weekends, it is unclear how he was able to obtain so many overtime hours through the years.").   The Court finds there is not enough evidence for a rational jury to find that the denial of overtime work alleged by Aiello constituted an adverse employment action.

Lastly, Aiello alleges that the May 12, 2008 Class II Written Warning, the May 14, 2008 Class III Written Warning and his subsequent termination resulted in an adverse employment action.   Courts in the Second Circuit have held that "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner," and that the application of disciplinary policies without more does not constitute an adverse employment action.  *Joseph v. Leavitt*, 465 F. 3d 87, 91 (2d Cir. 2006).  Accordingly, applying its disciplinary policy by classifying Aiello's actions consistent with its pre-existing disciplinary action guide is not an adverse employment action.  Further these classifications did not rise to the level of an adverse employment action. *Abraham v. Potter*, 494 F. Supp. 2d 141, 147 (D. Conn. 2007) (Courts in this circuit have found that "reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation.") (internal quotation marks and citation omitted).  Therefore the May 12, 2008 Class

II Written Warning and the May 14, 2008 Class III Written Warnings alone do not constitute adverse employment actions. *Evarts v. So. New England Tel. Co.*, No.3:00cv1124, 2006 WL 2864716, at *11 (D. Conn. Oct. 2, 2006) (concluding that a "verbal warning ..., the lowest form of discipline and the first step in a four-step process outlined in the Collective Bargaining Agreement" was not an adverse employment action). It is undisputed that Aiello's termination constituted an adverse employment action. The fact that the May 12, 2008 Class II Written Warning and the May 14, 2008 Class III Written Warning were the basis of the Hospital's decision to terminate Aiello demonstrates that Aiello suffered a material adverse change as a result of the combination of these written warnings. Therefore when viewing the facts in the light most favorable to the non-moving party, Plaintiff has established that he suffered an adverse employment action with regard to each of those written warnings and his subsequent termination.

   ii.  Analysis of Whether the Circumstances Surrounding Aiello's Termination Gives Rise to an Inference of Gender Discrimination.

Aiello cites to the purported discriminatory comments that his supervisor Vidulich made as well as the comments that Vidulich's supervisor Sack made as evidence giving rise to an inference of discrimination. While Plaintiff's unverified amended complaint is filled with allegations regarding the discriminatory conduct that both Vidulich and Sack engaged in, Plaintiff has presented little admissible evidence to support such allegations. In the unverified amended complaint, Aiello alleges that both Sack and Vidulich stated to him that they wanted him to leave the employ of Defendant so that they could hire younger and female

employees. [Doc. #38]. However, Aiello presents no evidence that Sack or Vidulich actually made such comments to him. Aiello's own deposition testimony belies these allegations.

When asked to tell every reason why Aiello believed Vidulich wanted him terminated because he was a male, Aiello testified "because she wanted younger people, male and female, mostly female, there instead of men." [Doc. #56, Aiello Dep. at 100-112]. Further, Aiello testified that Vidulich wanted younger female employees because "she was a divorced woman. She hated men… she just hated men in general, you know. She's bitter." [*Id.*]. When asked to tell every reason why Aiello believed Sack wanted him terminated because he was a male, Aiello testified "[b]ecause I'm a male and I was making money, and he could hire someone younger and cheaper." [*Id.* at 101]. The only other comments that Aiello testified that Sack made to him regarding his gender is that Sack would frequently call him "Old Man." [*Id.* at 96,99]. The Court further notes that the comments Aiello alleges Sack made regarding his weight are not related to his gender and therefore cannot be used to support an inference of gender discrimination. Therefore, the evidence that Aiello submits to support his allegation that both Vidulich and Sack discriminated against him because of his gender is simply based on Aiello's own unsubstantiated and conclusory beliefs.

Aiello also alleges that his colleague and co-worker Mihn Phan also called him "old man" and wanted him to leave so that he could work with younger females. [Doc. #56, Aiello Dep. at 78-79]. These comments are arguably stray remarks as Minh Phan was not Aiello's supervisor nor was he involved in the

decision to terminate Aiello. "Stray remarks by an employer do not prove discriminatory animus unless there is a causal connection to plaintiff's alleged adverse employment action." *Trojanowski v. Blakeslee Prestress, Inc.*, No. 3:08cv548 (WWE), 2009 WL 3340426, at *4 (D. Conn. Oct. 15, 2009). While Phan did file an incident report which lead to DeMuro investigating the incident which resulted in the May 14, 2008 Class III Written Warning, there is no evidence in the record demonstrating that Phan played a part in the investigation nor was he involved in the decision to issue the Class III written warning or the decision to terminate. Therefore, Aiello has not demonstrated a causal connection between such remarks and the decision to terminate.

The only other evidence that Aiello proffers to support his allegation that he was discriminated against on the basis of his gender is his allegation that other similarly situated individuals were not disciplined or terminated when they engaged in similar conduct. "Ordinarily, the question of whether two employees are similarly situated is a question of fact for the jury. This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Babcock v. New York State Office of Mental Health*, No.04CIV.2261, 2009 WL 1598796, at *4 (S.D.N.Y. June 8, 2009) (*quoting Harlen Assocs. v. Incorporated Vill. Of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001)). The plaintiff must at least "provide an objectively identifiable basis for comparability between h[im]self and other employees" and "[c]onclusory statements that 'similarly situated' employees outside the protected class were treated more favorably are not sufficient to

defeat summary judgment." *Id.* (internal quotation marks and citation omitted). The plaintiff must also prove that he was similarly situated in all material respects to individuals with whom he compares himself and to satisfy the all material respects standard for being similarly situated, a plaintiff must show that his co-employees were subject to the same performance evaluation and discipline standards. *O'Hazo v. Bristol-Burlington Heath Dist.*, 599 F. Supp. 2d 242, 258 (D. Conn. 2009). The Court notes that "[a]llthough the ultimate burden in making a *prima facie* case is slight, the issue of whether fellow employees are similarly situated is somewhat strict." *Brown v. Middaugh*, 41 F. Supp. 2d 172, 184 (N.D.N.Y. 1999).

In connection with the May 12, 2008 Class II Written Warning for failure to properly record time worked, Aiello lists several individuals who he alleges also failed to properly record time worked and were not so disciplined. In particular, he identifies the similarly situated individuals as Laura Martinelli who is female and born in 1965, Robert Tuminksi who is male and born in 1979, Mihn Phan who is male and born in 1977, Charlotte Kane who is female and was born in 1948, and Katie Macari who is female and age 31. [Doc. #56 and Doc. # 38]. The Court will also consider Plaintiff's allegations of discrimination in connection with the November 20, 2007 Class III Written Warning as Defendant has relied on this warning in its decision to terminate Aiello. In connection with the November 20, 2007 Class III Written Warning, Aiello lists several individuals who he alleges also imaged a patient without registering or having a script to perform the exam. In particular, he identifies the similarly situated individuals as Denise Johnson who

is female and 63 years old, Charlotte Kane who is female and was born in 1948, Laura Martinelli who is female and born in 1965, Yolanda Crenshaw who is female, Robert Tuminski who is male and born in 1979, Mihn Phan who is male and born in 1977, and Daniel DePalma who is male. The Court notes Aiello does not provide much detail regarding these similarly situated individuals to enable the Court to really engage in a valid comparison. For example, Aiello does not provide the Court with these individuals' job titles or otherwise provide information regarding whether these individuals worked in the same department or were supervised by the same individuals. Even assuming that all of these individuals had the same job as Aiello and were subject to the same performance evaluation and discipline standards, Aiello has failed to present sufficient evidence to establish that these individuals were actually similarly situated.

First, an inference of gender discrimination is undermined by the fact that Aiello identifies both female and males who received preferential treatment. It appears that Aiello is alleging that only old males were discriminated against as Aiello alleges that older females and younger males were accorded preferential treatment. However, this combination of his gender and age discrimination claim undermines each independent claim. A claim that an employer has discriminated against an employee on the basis of his or her gender is premised on the fact that the employer's decisions and actions are driven by the employer's unlawful belief and bias about a particular gender. By identifying both males and females as similarly situated individuals, Aiello, himself, demonstrates that there was nothing particular about a being a male that the Hospital disfavored. Therefore,

the inclusion of males as individuals who were favored by the employer undermines Aiello's claim that the adverse employment actions taken against him were the result of his gender. *See Hirschberg v. Bank of America, N.A.*, 754 F. Supp. 2d 500, 517 (E.D.N.Y. 2010) (finding that "at least five of the comparators that Defendant allegedly treated more favorably than Plaintiff were also in the protected class" which "undercuts Plaintiff's theory that any difference in discipline between Plaintiff and Anderson for the same conduct was age-based.").

Second, Aiello essentially concedes in his deposition testimony that these identified individuals could not be considered similarly situated as he testified that management was not aware that any of these individuals had engaged in similar conduct. [Doc. #56, Aiello Dep. at 113-125]; *Hirschberg*, 754 F. Supp. 2d at 516-517 (concluding that plaintiff had submitted no evidence that defendant preferentially treated other similarly situated employees as plaintiff had not produced any evidence that the defendant knew or should have known that any of the comparators engaged in the same conduct). Since management was not aware that each of these individuals had either failed to properly record time worked or had imaged a patient without registering or having a script, management could not have engaged in preferential treatment with respect to such individuals. Accordingly, Aiello has not submitted any evidence that supports his allegation that the Hospital preferentially treated other similarly-situated employees outside the protected group who engaged in the same

conduct as him in connection with the May 12, 2008 Class II Written Warning or the November 20, 2007 Class III Written Warning.

In connection with the May 14, 2008 Class III Written Warning and subsequent termination, Aiello alleges that "two other employees of the defendant, ultrasound technicians, received two Class Three disciplinary actions in one year, as the plaintiff had, yet they were not terminated, as was the plaintiffs. The two employees were 26-27 years old and 35-38 years old." [Doc. #56]. In his deposition testimony, Aiello identifies these two ultra sound technicians as males which again undermines an inference of gender discrimination. In addition, Aiello essentially concedes in his deposition that this allegation is unfounded and unsubstantiated. Aiello admits that he did not know for a fact if these two individuals had actually received such discipline: "I'm sure they received them warnings … I don't know for a fact, but they were bad." [Doc. #56, Aiello Dep. at 126-127]. When asked "do you know if they received any class 3 warnings," Aiello responded "Not to my knowledge. But for what they did they must have." Aiello was then asked "If they must have, you don't know if they received two within one year," to which it he replied "no." [*Id.*]. Aiello admits that he is merely "speculating" that these two ultrasound technicians received such warnings. [*Id.*].

Aiello alleges in his unverified amended complaint that "no employee of defendant in the radiology department has been terminated for not calling an appropriate code team in a timely manner" and "that during the entire time of the plaintiff's employment with defendant, no other employee in the radiology

department has been terminated by the defendant for performance issues."
[Doc.#38]. However, Aiello has not supported either of these two allegations with
admissible evidence and therefore cannot use either allegation to create an issue
of disputed fact. Even assuming there was admissible evidence to support these
allegations, it is unclear how either could be used to support an inference of
gender discrimination as Aiello does not identify any similarly situated females
who called an alert and not a code and went undisciplined.

Lastly, the fact that the Hospital hired a male to replace Aiello also
undermines a finding that the circumstances surrounding the decision to issue
those two written warnings and terminate Aiello gave rise to an inference of
gender discrimination. *Burrell v. Bentsen*, No.91CIV.2654, 1993 WL 535076, at *8
(S.D.N.Y. Dec. 21, 1993) (plaintiff, a black male, failed to present a prima facie
case "insofar he has not demonstrated that defendant replaced him with a
member not of the protected group, or if there was no replacement, that
defendant retained similarly situated employees who were not members of the
protected group" and noting that following plaintiff's dismissal, defendant hired a
black male and a black female). A rational jury would arguably not conclude that
the evidence in the record gives rise to an inference of gender discrimination.
Nevertheless, even assuming arguendo that Plaintiff has presented enough
evidence to establish a *prima facie* case of gender discrimination, Defendant has
presented a legitimate non-discriminatory reason for its actions, which Plaintiff
has failed to rebut and establish that this reason was a mere pretext for gender
discrimination.

### iii. Analysis of Whether Defendant's Legitimate Non-Discriminatory Reason for Aiello's Termination Was a Pretext for Gender Discrimination

Defendant alleges that Aiello was terminated in accordance with the Hospital's routine practice of terminating employees who either have received three written warnings within a one-year period or received two class III infractions within a one-year period. [Doc. # 47].  As a result of the issuance of the Class III written warning on May 14, 2008, Aiello had received one Class II written warning and two Class III written warnings in a one year period from November 2007 to May 2008.  [*Id.*].  At this stage, Defendant need only proffer not prove, the existence of a nondiscriminatory reason for their employment decision to meet their burden, it is Plaintiff's burden to show that the legitimate, nondiscriminatory reason offered by the Defendant is mere pretext for illegal employment discrimination.  *McDonnell*, 411 U.S. at 804.

Aiello relies on the same evidence as discussed above to demonstrate that the legitimate nondiscriminatory reason offered by Defendant is mere pretext for gender discrimination.  As discussed above, Aiello has not provided sufficient evidence that similarly situated individuals engaged in the same conduct that Aiello engaged in and were not disciplined or terminated for such conduct.  In addition, the only comments that Aiello alleges a supervisor made to him that might reflect discriminatory animus is that Sack, who was 65 years old, would call Aiello "Old Man."   Moreover, Sack neither made nor participated in imposing the adverse employment decision.  *Drummond v. IPC Int'l Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) ("As an initial matter, the Court notes that a well-recognized

inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class.") (*citing Toliver v. Community Action Comm'n to Help the Economy, Inc., CACHE*, 613 F. Supp. 1070, 1074 (S.D.N.Y. 1985) for the proposition that "if a decision maker is in same protected class as plaintiff, claims of discrimination become less plausible"). It was Vidulich and DeMuro who made the decision to terminate Aiello not Sack. The evidence of gender discrimination that Aiello attributes to Vidulich are based entirely on Aiello's own unsubstantiated belief that Vidulich hated men and desired to hire younger females. As discussed above, Phan's comments should be considered stray remarks as he was not involved in the decision to terminate Aiello. Even when viewing the facts in the light most favorable to the Plaintiff, Plaintiff has failed to present sufficient evidence to establish that the decision to issue the Class II and Class III written warnings and terminate his employment was motivated by gender discrimination. *Miller v. Nat'l Ass'n of Securities Dealers, Inc.*, 703 F. Supp. 2d 230, 248 (E.D.N.Y. 2010) (finding where "in connection with pretext, [] [plaintiff's] sweeping statements that he received harsher treatment than other younger employees and that [defendant] routinely ignored similar deficiencies from younger employees are baldly conclusory and utterly unsubstantiated by any specific facts in the fact. When an employer accused of discrimination provides convincing evidence explaining its conduct, and the plaintiff's case rests on conclusory allegations such as these, it is proper for a court to conclude that there is no genuine issue of material fact and to grant summary judgment for the employer.") (*citing Meloff v. New York*

*Life Ins. Co.*, 51 F,3d 372, 375 (2d Cir. 1995); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F. 3d 14, 18 (2d Cir. 1995)). Accordingly, the Court finds there is no genuine issue of material fact and grants Defendant's motion for summary judgment on Aiello's gender discrimination claim.

### Analysis of ADEA Employment Discrimination Claim

Plaintiff's claim under the ADEA that he was discriminated against on the basis of his age is traditionally analyzed under the same standards as Title VII claims. *Nieves v. Angelo, Gordon & Co.*, 341 Fed.Appx. 676, (2d Cir. 2009) ("The same standards and burdens apply to claims under both Title VII and the ADEA"). However, the Supreme Court has recently noted that it "had not definitively decided whether the evidentiary framework of *McDonnell Douglas* … is appropriate in the ADEA context," *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2349 n. 2 (2009). Nonetheless, the Second Circuit has concluded that post-*Gross* the *McDonnell Douglas* framework is still applicable to ADEA claims however the latter part of the *McDonnell Douglas* formulation has been altered by "eliminating the mixed-motive analysis that circuit courts had brought into the ADEA from Title VII cases." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 92, 106 (2d Cir. 2010) (finding post-*Gross* that "we remain bound by, and indeed see no reason to jettison, the burden-shifting framework for ADEA cases that has been consistently employed in our Circuit"); *Hrisinko v. N.Y.C. Dep't of Educ.*, 369 F.App'x. 232, 234 (2d Cir. 2010) (finding that employees must now prove that "age was the 'but-for' cause behind the employer's adverse decision, and not merely one of the motivating factors.")

Here it is undisputed that Aiello is a member of a protected class under the ADEA.  As discussed above, Aiello has demonstrated that he was qualified for his position and that he suffered an adverse employment action in connection with the May 12, 2008 Class II Written Warning, the May 14, 2008 Class III Written Warning and his subsequent termination.   In addition, Aiello argues that an inference of age discrimination arises from the fact that a 32 year old male was hired to fill the vacancy caused by Aiello's termination.   Although an inference of discrimination does not arise when a plaintiff is replaced by another person who is only slightly younger, courts have held that an age difference of eight years is "not insignificant".  *Tarshis v. Riese Org.*, 211 F.3d 30, 38 (2d Cir. 2000), *abrogated by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) on other grounds. Furthermore, this Court has noted that a "twelve year age difference certainly suffices as a substantial discrepancy in age to raise an inference of discrimination."  *Pleau v. Centrix, Inc.*, No. 06cv01626(DJS), 2008 WL 4380515, at *5 (D. Conn. Sept. 24, 2008).  Here, a thirty-three year age difference between Aiello and his replacement gives rise to an inference of age discrimination. Aiello has thus provided enough evidence to establish a *prima facie* case of age discrimination.   As discussed above in connection with Aiello's gender discrimination claim, Defendant has presented a legitimate non-discriminatory reason for its actions.

       i.     **Analysis of Whether Defendant's Legitimate Non-Discriminatory Reason for Aiello's Termination Was a Pretext for Age Discrimination**

As discussed above, Defendant alleges that Aiello was terminated in accordance with the Hospital's routine practice of terminating employees who either have received three written warnings within a one-year period or received two class III infractions within a one-year period. [Doc. # 47].   Moreover under *Gross*, the mixed-motive analysis has been eliminated and Aiello must prove that age was the "but-for" cause behind the employer's adverse decision, and not merely one of the motivating factors.   The Court notes that Aiello's allegations that the adverse employment actions that Defendant took against him were also motivated by his gender undermines his ability to demonstrate that age was the "but for" cause behind his employer's adverse decision.

To demonstrate that Defendant's action were the result of age discrimination, Aiello relies on similar evidence, and in some instances the same evidence, that he proffered in support of his gender discrimination claim.   Again, Aiello cites to the discriminatory comments that his supervisor Vidulich made as well as the comments that Vidulich's supervisor Sack made as evidence of pretext.   Again in the unverified amended complaint, Aiello alleges that both Sack and Vidulich told him that they wanted him to leave the employ of Defendant so that they could hire younger and female employees.   However, Aiello presents no evidence that Sack or Vidulich actually made such comments to him.   In fact, Aiello's own sworn deposition testimony belies these allegations.   When Aiello was asked to state every reason why he believed Vidulich wanted to terminate him because of his age, he responded only that "she wanted younger people in the department." [Doc. #56, Aiello Dep. at 100-112].   When Aiello was asked "what

did David Sack say to you that leads you to state that he wanted somebody younger?" Aiello responded only that "[h]e was always looking for younger people. Always wanted to hire students.  They didn't have slots, so they had to create slots to hire people."  [*Id.* at 101].  In addition, when Aiello was asked "what makes you think that David Sack wanted to either fire you or force you to quit because you're a male," he testified that "[b]ecause I'm a male and I was making money, and he could hire someone younger and cheaper."  [*Id.*].  In addition, Aiello testified that Sack, himself 65 years old, would frequently call him "Old Man" and would ask him "are you going to retire soon."  [*Id.* at 96,99].  The Court further notes that the comments Aiello alleges Sack made regarding his weight are not related to his age and thus does not support the claim of age discrimination as weight does not equate to age.  As with his other claims, the evidence that Aiello submits to support his allegation that both Vidulich and Sack discriminated against him because of his age is largely based on Aiello's own unsubstantiated and conclusory beliefs.  As discussed above, Phan's comments should be considered stray remarks as Phan did not play a role in the decision to discipline or terminate Aiello.

Aiello also alleges that Vidulich and another employee Amy Haskell harassed him about his age when they called his home on a Sunday to discuss the incidents that led to the March 2006 Discipline.  In Aiello's sworn deposition testimony concerning the phone call, Aiello testified that they called to discuss him working "excessive hours" and that he considered it harassing because they called "on a Sunday morning?  It couldn't wait 'til Monday when I went to work."

[Doc. #56, Aiello Dep. at 62-70].  Further, when Aiello was asked, "[d]o you believe that this call on Sunday by Amy and Jory to discuss your schedule, how [does] it relate to your age?" Aiello testified "because maybe they were worried that I was too old to do that hours."  [*Id.*].  Aiello was then asked "so you're speculating that maybe—" he responded "I don't know.  Or they were just picking on me.  I don't know." [*Id.*].   Aiello admitted in the deposition that he did not recall if Vidulich or Haskell had said "anything in that call about your age."  [*Id.*].  Therefore the only evidence that Aiello has submitted to support his allegation that Vidulich called him as a result of her bias against older employees is Aiello's unsubstantiated speculation that "maybe they were worried that I was too old to do that hours." Aiello admits in his deposition that he did not know if their call was driven by any age-related bias.

Aiello also relies on the same evidence regarding similarly situated individuals as he proffered in connection with his gender discrimination claim. The Court notes that three of the other similarly situated individuals, Charlotte Kane, Denise Johnson, and Denise Ambruso that Aiello identified are also protected under the ADEA.   As discussed above, such evidence regarding pretext is undermined by the fact that Aiello identifies both older and younger individuals who received preferential treatment.   Again Aiello is asserting a theory that only old males were discriminated against since older females and younger males were accorded preferential treatment.   Similarly, as discussed above the fact that older individuals were afforded preferential treatment cuts against Aiello's theory that he was discriminated against on the basis of his age.

Again, a claim that an employer has discriminated against an employee on the basis of his or her age is premised on the fact that the employer's decisions and actions are driven by the employer's unlawful belief and bias about older employees – that there is some characteristic of older employees that is undesirable.  By identifying both older and younger individuals as similarly situated, Aiello, himself, demonstrates that there was nothing particular about a being an older employer that the Hospital disfavored.  *See Germany v. N.Y.S. D.O.C.S.*, No.03Civ.148, 2003 WL 22203724, at *8 (S.D.N.Y. Sept. 22, 2003) ("no inference that Germany has been treated differently from other similarly situated employees can be drawn from this. The Complaint identifies six individuals assigned to the School whom Germany believes are less qualified than he is. Three of these employees are white, and three are African-American.  Thus, on the face of the Complaint, the facts pleaded refute any contention that the reason Germany was not selected was because of his race."); see also *Burrell*, 1993 WL 535076, at *8 (plaintiff, a black male, failed to present a prima facie case when after plaintiff's dismissal, defendant hired a black male and a black female). Therefore, the inclusion of older individuals as those who were favored by the employer undermines Aiello's claim that the adverse employment actions taken against him were the result of his age.  *Hirschberg v. Bank of America, N.A.*, 754 F. Supp. 2d at 516-517 (finding that "at least five of the comparators that Defendant allegedly treated more favorably than Plaintiff were also in the protected class" which "undercuts Plaintiff's theory that any difference in discipline between Plaintiff and Anderson for the same conduct was age-based").

As discussed above, Aiello essentially conceded in his deposition testimony that these identified individuals could not be considered similarly situated as he testified that management was not aware that any of these individuals had engaged in similar conduct. [Doc. #56, Aiello Dep. at113-125]; *Hirschberg*, 754 F. Supp. 2d at 515-516. Accordingly, Aiello has not submitted any evidence that supports his allegation that the Hospital preferentially treated other similarly-situated employees outside the protected group who engaged in the same conduct as him in connection with the May 12, 2008 Class II Written Warning or the November 20, 2007 Class III Written Warning.

As discussed above, in connection with the May 14, 2008 Class III Written Warning and subsequent termination, Aiello alleges that "two other employees of the defendant, ultrasound technicians, received two Class Three disciplinary actions in one year, as the plaintiff had, yet they were not terminated, as was the plaintiffs. The two employees were 26-27 years old and 35-38 years old." [*Id.*]. While Aiello does allege that these two employees are significantly younger than him, Aiello admits in his deposition that he does not know if they had received such written warnings and was merely speculating. [Doc. #56, Aiello Dep. at 126-127]. As discussed above, Aiello has also not supported his allegations that "no employee of defendant in the radiology department has been terminated for not calling an appropriate code team in a timely manner" and "that during the entire time of the plaintiff's employment with defendant, no other employee in the radiology department has been terminated by the defendant for performance issues." Again, it is unclear how these allegations could be used to establish

pretext for age discrimination as Aiello does not identify any similarly situated younger employees who called an alert and not a code and went undisciplined.

Lastly, Aiello alleges that the decision to discipline and terminate him was the result of age discrimination based on the fact that he "was terminated six days prior to having been employed by the defendant for twenty years." [Doc. #56 and Doc. #38]. However, Aiello does not allege any facts or present any evidence that demonstrates that the fact that he was terminated just six days prior to working at the Hospital for twenty years had any impact on DeMuro and Vidulich's decision to terminate him. Aiello also alleges that Defendant considered February 1, 2008 to be his normal retirement date. Aiello alleges that that by working to this date, the "plaintiff would have been entitled to additional benefits." [*Id.*]. However, as Defendant points out Aiello worked past this date and therefore received whatever benefits he was entitled to. Moreover, Aiello does not identify any particular benefits that he was wrongly denied and in fact presents no evidence regarding benefits whatsoever.

While the proximity of his termination to his retirement date could establish a prima facie case of age discrimination, here Aiello fails to present evidence that his termination deprived him of any retirement or other benefit. *See Benajmin v. United Merchants and Mfrs., Inc.*, 873 F.2d 41, 42-43 (2d Cir. 1989); *see also Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1421 (7th Cir. 1992). Aiello only alleges that the implication of this "normal retirement" date "was that [defendant] believe that the plaintiff should have retired by that date, and was too old to

continue working." [Doc. # 56]. However, Aiello does not present any admissible evidence to support this allegation.

Moreover, Aiello testified that it was Vidulich and Sack who considered that February 1, 2008 to be his normal retirement date. However, when asked if he had discussed the date with Vidulich or Sack, Aiello testified that he could not recall if they had a discussion and that "I just can't recall at this time why that date stuck in my head." [Doc. #56, Aiello Dep. at 185-188]. Therefore, Aiello's allegations regarding a normal retirement date are unsubstantiated and not supported by any evidence in the record. Finally, Aiello has also presented no evidence that his alleged normal retirement date played any part in DeMuro and Vidulich's decision to terminate him.

Plaintiff has simply not supported his allegations regarding pretext with admissible evidence and therefore has failed to rebut Defendant's legitimate non-discriminatory reason for its employment decisions. After scouring the record, the Court finds there is simply no evidence that the Hospital disciplined and terminated Aiello for any other reason other than Aiello's inappropriate conduct that resulted in him receiving two Class III and one Class II written warnings within one year. While it is clear that Aiello disagreed with the underlying basis for the Class II and Class III written warnings he received that alone is not enough to raise a genuine issue of material fact. *Jensen v. Garlock, Inc.*, 4 F. Supp. 2d 219, 223 (W.D.N.Y. 1998) ("merely disagreeing with an employer's assessment, or even suggesting that an employer has not been fair in its stated reasons for terminating an employee does not satisfy a plaintiff's burden: [plaintiff] must

raise a genuine issue of material fact that the decision to terminate him was motivated at least in part by an *unlawful* reason, *i.e.,* age discrimination. As the Second Circuit recently reiterated: 'the creation of a genuine issue of fact with respect to pretext alone is not sufficient. There must also be evidence that would permit a rational fact finder to infer that the discharge was actually motivated, in whole or in part, by discrimination on the basis of age.'") (*quoting Grady v. Affiliated Cent. Inc.,* 130 F. 3d 553, 561 (2d Cir. 1997)). Aiello has failed to present evidence that would permit a rational fact finder to conclude that age was the "but for" cause of the Hospital decision to discipline and terminate him. Accordingly, the Court finds there is no genuine issue of material fact and grants Defendant's motion for summary judgment on Aiello's age discrimination claim.

### Analysis of Title VII and ADEA Retaliation Claim

Aiello also alleges that the Hospital retaliated against him when he complained about age and gender discrimination. To establish a *prima facie* claim for retaliation under both Title VII and the ADEA, the plaintiff must show that (1) he engaged in a protected activity; (2) his employer is aware of the activity; (3) the employer took some adverse action against him; and (4) a causal connection exists between the protected activity and the adverse action that a retaliatory motive played a party in the adverse employment action. *Cifra v. G.E. Co.,* 252 F.3d 205, 216 (2d Cir. 2001). Retaliation claims are also analyzed using the burden-shifting framework set forth in *McDonnell Douglas*. Here, Aiello has failed to establish a *prima facie* case of retaliation. Aiello alleges in his unverified amended complaint that he complained about discriminatory conduct to

Defendant on numerous occasions.  However in Aiello's deposition testimony, Aiello only identified two instances where he complained to management and also testified that beyond these two complaints, he never complained to any member of management concerning any discriminatory treatment.  [Doc. #56, Aiello Dep. at 130-131].

The Court notes that the definition of protected activity does encompass "informal protests of discriminatory employment practices," such as "making complaints to management."  *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).  However "[t]o succeed on retaliation claim, the plaintiff must show that the employer could reasonably have understood that the plaintiff's opposition was directed at conduct prohibited by Title VII" or the ADEA.  *Chacko v. Connecticut*, No.3:07-cv-1120, 2010 WL 1330861, at *12 (D. Conn. March 30, 2010); *McDowell v. T-Mobile USA, Inc.*, 307 Fed.Appx. 531, 534 (2d Cir. 2009) (plaintiff could not establish that he engaged in protected activity because he never explicitly complained about race discrimination, and there was no evidence, other than his own testimony, from which a jury could conclude that the supervisors could have understood the complaints were about race); *Ochei v. Coler / Goldwater Memorial Hosp.*, 450 F. Supp. 2d 275, 287 (S.D.N.Y. 2006) ("[plaintiff] has claimed that she was retaliated against for complaining about observations of her work, and other allegedly adverse actions. However, because she does not allege that she ever complained to her supervisors that she was the victim of discrimination, these complaints are not protected activity as a matter of law.").  Although complaints about conduct clearly prohibited by Title VII or the

ADEA "need not mention discrimination or use particular language, ... ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." *Int'l Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC*, 470 F. Supp.2d 345, 357 (S.D.N.Y. 2007) (internal citation omitted).

The first complaint Aiello identified was 15 or 16 years ago and concerned the Hospital's attempt to move Aiello's start time up by an hour. Ultimately, the Hospital and Aiello agreed to move his start time by only half an hour in a compromise. [Doc. #56, Aiello Dep. at 128-131]. There is no evidence in the record that Aiello's complaint 15 or 16 years ago to management was about age or gender discrimination. In addition, Aiello has presented no evidence that DeMuro or Vidulich who made the decision to terminate him was aware of this complaint. Moreover, as this event occurred more than 15 or 16 years prior to Plaintiff's termination it is too remote to establish a causal connection between the complaint and the discipline and termination of Aiello in 2008. *Harrison v. North Shore University Hosp.*, No.cv04-2033, 2008 WL 656674, at *12 (E.D.N.Y. March 6, 2008) (finding that the lapse of one year between plaintiff's complaint and termination was too remote as a matter of law to establish a causal connection); See also *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503 (S.D.N.Y. 2010) ("most of the decisions in this Circuit that have addressed this issue have held that lapses of time shorter than even three months are insufficient to support an inference of causation").

The second complaint Aiello identified was his verbal complaint to Macari around 2006 regarding his claim that Macari was giving overtime to her "friends." Aiello testified that he complained that "if she didn't change I was going to go to the labor Department…just giv[ing] [overtime] to younger people in the department."    [Doc. #56, Aiello Dep. at 24-25].    It is unclear from Aiello's testimony whether Aiello's actual complaint to Macari conveyed that the basis of his belief was that he was being discriminated against because of his gender and age.  Aiello's testimony regarding his complaint mainly focuses on how Macari was giving overtime to her friends.   Although Aiello does testify that he mentioned going to the Labor Department and viewing the facts in the light most favorable to the non-moving party, the invocation of the Labor Department could have put Macari on notice that Aiello was complaining about age or gender discrimination.   A reasonable juror could conclude that when Aiello mentioned the Labor Deparment that Macari could have understood that his complaint about overtime was about age and/or gender discrimination.  However, Aiello has failed to establish that a causal connection exists between his complaint in 2006 and the decision to discipline and terminate him in 2008.

Aiello has presented no evidence that DeMuro or Vidulich who made the decision to terminate him was aware of his 2006 complaint to Macari.  In addition, Aiello cannot rely on temporal proximity alone to show causation, as the proximity must be "very close" in order to support a *prima facie* case of retaliation*.  Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (20 month period suggested, "by itself, no causality at all").  Here there is a two year

lapse between his complaint to Macari and the adverse employment actions. *Harrison*, 2008 WL 656674, at *12 (finding that a lapse of one year to be too remote to establish causation). Aiello presents no other evidence which demonstrates that his complaint to Macari regarding overtime motivated DeMuro and Vidulich's decision to discipline and terminate Aiello in 2008. For the foregoing reasons, Aiello has failed to establish a *prima facie* case of retaliation and Defendant's motion for summary judgment as to Plaintiff's Title VII and ADEA retaliation claims is granted.

### Analysis of Hostile Work Environment Claim

Under Title VII and the ADEA, it is unlawful for an employer to subject individuals to a discriminatorily hostile or abusive work environment. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993); 42 U.S.C. § 2000e–2(a)(1); *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) ("The same standards apply to hostile work environment claims brought under the ADEA" as under Title VII). To prove that a workplace is actionably "hostile" under Title VII, a plaintiff must demonstrate that: (1) he "subjectively perceive[d] the environment to be abusive;" (2) the conduct was so "severe or pervasive" that it created an "objectively hostile or abusive work environment", meaning "an environment that a reasonable person would find hostile or abusive;" and (3) the conduct created an environment abusive to employees "because of their race, gender, religion or national origin." *Harris*, 510 U.S. at 21–22.

The Supreme Court has established a non-exhaustive list of factors relevant to determining whether a workplace is so severely or pervasively hostile

as to support a Title VII claim. These include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether the conduct unreasonably interfered with plaintiff's work; ... whether it unreasonably interferes with the employee's work performance[;]" and "[t]he effect on the employee's psychological well-being[.]" *Id.* at 23.

To determine "whether an environment may be considered sufficiently hostile or abusive to support [a Title VII claim]," courts must consider "the totality of the circumstances." *Williams v. Westchester,* 171 F.3d 98, 100 (2d Cir.1999) (citing *Harris,* 510 U.S. at 23). The factors outlined above must be evaluated "cumulatively" so that the Court can "obtain a realistic view of the work environment." *Schwapp v. Town of Avon,* 118 F.3d 106, 111 (2d Cir.1997) (citations omitted). This includes evaluating the "quantity, frequency, and severity" of the discriminatory incidents. *Id.* "In order to meet [her] burden, the plaintiff must show more than a few isolated incidents of racial enmity[.]" *Williams*, 171 F.3d at 100. Instead, the plaintiff "must establish that his workplace was permeated with instances of racially discriminatory conduct such as 'discriminatory intimidation, ridicule, and insult,' such that 'the environment would reasonably be perceived, and is perceived, as hostile or abusive.' *Id.* (citations omitted).

In support of his hostile work environment claim, Aiello alleges that Hospital employees would frequently call him "the Old Man" and would draw offensive pictures aimed at him and leave these pictures out in the communal

workspace.  [Doc. #56].  Aiello identifies two specific offensive drawings or pictures.  One drawing was of an older man looking through a pair of legs and was referred to as "George's Peephole."  [Doc. #56].  The second picture was of a man having sexual intercourse with a donkey in which Aiello's name may have been written on.  Aiello also alleges that employees would post pornographic material and directed him to view the images knowing it disturbed him.  [Doc. #56].  In connection with such drawings and pictures, Aiello alleges that employees would tell him "there you are on the wall, that's what old men do" or "this is going to happen to you because you are old."  [Doc. #56].  Aiello also testified in his deposition that there were just a couple of these offensive drawings or pictures made over a period of "years."  [Doc. #56, Aiello Dep. at 80-84].  Aiello also alleges that Phan would call him "old man" several times a week for years and would make up stories about him.  [*Id.* at 78-79].  He also alleges that another employee whose first name is Ron, but whose last name was not discussed, had called him "old person" or "old man" just a "couple of times" and specified that it was maybe five or ten times in a "six year period."  [*Id.* at 93-94].  While such conduct is clearly unprofessional and inappropriate, it does not rise to the level necessary to support a hostile work environment claim. *Oncale v. Sundowner Offshore Servs., Inc.,* 235 U.S. 75, 80 (1998) (Title VII is not a "general civility code for the American workplace.").

Here, Aiello has only alleged a few isolated incidents of gender or age enmity and has not provided evidence that the workplace was permeated with instances of age or gender discriminatory conduct.  "Usually, a single isolated

instance of harassment will not suffice to establish a hostile work environment unless it was extraordinarily severe." *Howley v. Town of Stratford*, 217 F.3d 141, 153-154 (2d Cir. 2000) (internal quotation marks and citation omitted). Aiello must show that the "series of incidents were sufficiently continuous and concerted [so as] to have altered the conditions of [his] working environment" which he has not done. *Id.* A handful of offensive drawings and pictures over a period of years and the fact that one co-worker frequently called Aiello "Old Man" is not severe or pervasive conduct that a reasonable person would find hostile or abusive. *Rios v. Buffalo and Fort Erie Public Bridge Authority*, Np.04-cv-375A, 2008 WL 657121, at *3 (W.D.N.Y. March 7, 2008) (finding that behavior complained of was "simply too infrequent and episodic to constitute a hostile work environment" where plaintiff identified "only about six specific instances of misconduct over a thirteen-year period of time" and "the incidents consisted primarily of isolated offensive remarks, jokes and cartoons."). In addition, Aiello has presented no evidence indicating that the conditions of his workplace were altered in a significant way or that the abusive work environment interfered with his ability to perform his job. Further, Aiello admitted that he never complained about this offensive conduct to anyone. Courts in the Second Circuit have routinely found that "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 76 (2d Cir, 2001) (internal quotations and citations omitted). Here, Aiello's allegations are

nothing more than isolated incidents of simple teasing and offhand comments which a reasonable person would not find hostile or abusive.

Assuming arguendo that Aiello did present sufficient evidence to establish a hostile work environment, Defendant would nonetheless be entitled to an affirmative defense to vicarious liability since it can demonstrate that "(1) it took reasonable steps both to prevent sexual harassment and to remedy the sexually harassing conduct promptly once it was brought to the employer's attention; and (2) the harassed employee unreasonably failed to avail herself of any corrective or preventive opportunities made available by the employer." *Breeding v. Cendant Corp.*, No.01CIV.11563, 2003 WL 1907971, at *6 (S.D.N.Y. April 17, 2003) (internal quotation marks and citation omitted). Here, Defendant has presented evidence that it maintained an anti-harassment policy and it is undisputed that Aiello and other employees had received the policy. In addition, Aiello has not presented any evidence or even suggested that the policy was not effective or had force. *See O'Dell v. Transworld Entertainment Corp.*, 153 F. Supp. 2d 378, 388 (S.D.N.Y. 2001) ("In determining whether an employer has met the first prong of its affirmative defense, the existence of an anti-harassment policy with complaint procedures is an important, although not dispositive, consideration. The employee may then rebut the employer's proof by showing that the sexual harassment policy is not effective, which can be demonstrated, for example, by evidence that the employer did not disseminate its policy to its employees.") (internal citation omitted). Here, Defendant has provided sufficient evidence to

meet the first prong of its affirmative defense while Aiello has failed to rebut Defendant's proof with respect to the first prong.

With respect to the second prong, Defendant has established that Aiello unreasonably failed to avail himself of the harassment policy or the Hospital's Employee Problem Review and Appeal Policy which proves a dispute resolution process for employees to assist with resolution of work related conflicts. Aiello admits in his deposition testimony that he did not complain to management of the conduct that he alleges created a hostile work environment. [Doc. #56, Aiello Dep. at 112]. Once a defendant has established that the plaintiff failed to make use of its policies, the burden of production shifts to the plaintiff to present evidence as to why he did not use the procedures. *Breeding v. Cendant Corp.*, 2003 WL 1907971, at *7. Courts have found that for a plaintiff's "reluctance [to report harassment] to preclude the employer's affirmative defense, it must be based on apprehension of what the employer might do; in other words, plaintiff must have had an objectively credible fear that the employer would not respond or would retaliate. Thus, plaintiff must produce evidence to the effect that the employer has ignored or resisted similar complaints or has taken adverse actions against employees in response to such complaints. The employer may rely on the absence or inadequacy of plaintiff's proffered evidence in satisfying its ultimate burden of persuasion as to the defense." *Id.* (internal quotation marks and citations omitted). Here, Aiello has not provided any evidence that he had a credible fear that the Hospital would not respond or retaliate. In addition, he has not produced evidence that the Hospital has ignored or resisted similar

complaints or has taken adverse actions against employees in response to such complaints.   Accordingly, Defendant would be entitled to assert an affirmative defense in connection with Aiello's hostile work environment claim.  For the foregoing reasons, Defendant's motion for summary judgment as to Plaintiff's hostile work environment claim is therefore granted.

<u>Analysis of CFEPA Claims</u>

It is well established that CFEPA claims proceed under the same analysis as ADEA and Title VII claims.  *Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6 (2002) (holding that the Connecticut Supreme Court looks to federal precedent when interpreting and enforcing the CFEPA); *McInnis v. Town of Weston*, 375 F. Supp. 2d 70, 85 (D. Conn. 2005).  The Court notes that Connecticut courts have not yet addressed whether the recent Supreme Court's decision in *Gross* also impacts the CFEPA analysis.  Until such time as the Connecticut courts adopt the *Gross* standard in connection with age discrimination claims, it will follow existing Connecticut court pronouncements on the appropriate standard to employ in applying Connecticut law, nevertheless, Plaintiff has failed to provide sufficient evidence establishing that Defendant's legitimate non-discrimination reason for the adverse employment action was a pretext for age discrimination under the prior more lenient standard.  Since the foregoing ADEA and Title VII analysis applies to Plaintiff's CFEPA claims, Defendant's motion for summary judgment is also granted as to Plaintiff's CFEPA claims.

<u>Analysis of Intentional Infliction of Emotional Distress Claim</u>

Aiello alleges that the Hospital's conduct was sufficiently extreme and outrageous to constitute the tort of intentional infliction of emotional distress. Under Connecticut law, in order to succeed on an intentional infliction of emotional distress claim, Plaintiff must establish "(1) that the actor intended to inflict emotional distress or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." *Appleton v. Bd. Of Ed. Of the Town of Stonington*, 254 Conn. 205, 210 (2000) (citation omitted). In addition, "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." Id. (citation omitted).

"In the employment context, it is the employer's conduct, not the motive behind the conduct, that must be extreme or outrageous. An employer's adverse yet routine employment action does not constitute extreme and outrageous conduct even if based on race or other improper motives." *Robinson v. City of New Haven*, 578 F. Supp. 2d 385, 390 (D. Conn. 2008) (internal quotation marks and citations omitted). "Routine employment action, even if undertaken with improper motivations, does not constitute extreme or outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner." *Conge v. Sikorsky Aircraft Corp.*, No.3:075-cv-1650, 2007 WL 4365676, at *9 (D. Conn. Dec. 11, 2007). Defendant has presented evidence that Aiello's

termination was nothing more than a routine employment action. Moreover, even If Aiello had presented evidence that Defendant improperly terminated his employment because of his age and gender, a reasonable person would not find that Defendant had engaged in outrageous conduct when they issued him Class II and Class III written warnings and terminated his employment. Aiello has presented no evidence that Defendant treated him outrageously when they disciplined him in accordance with its own disciplinary policies and terminated him in accordance with its routine practice. Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's intentional infliction of emotional distress claims.

### Analysis of Negligence Claims

Aiello conclusorily alleges in his unverified amended complaint that "defendant, inter alia, failed, refused or neglected to supervise, train, instruct, monitor, adequately screen, hire or otherwise direct its agents, officers or employees regarding the plaintiff; to protect the plaintiff from the negligent, reckless, intentional or tortious acts of its agents, officers or employees; and by and through other acts and omissions failed, refused or neglected to fulfil its duties to the plaintiff." [Doc. 38]. These claims as alleged in the unverified amended complaint are on the face of the complaint conclusory, vague and somewhat incoherent. It is not surprising that Defendant in its memorandum of law in support of its motion for summary judgment spends a significant portion of its time speculating what is Plaintiff's theory with regard to these claims and then attempts to discredit such theory.

Further, Plaintiff fails to clarify his theory with respect to these claims in his memorandum of law in opposition to Defendant's motion to dismiss as he completely fails to address these claims whatsoever in the memorandum of law. In fact, Plaintiff does not put forth any disputed issues of material fact in connection with this claim in his Local Rule 56(a)2 Statement. Consequently, Plaintiff has failed to present any admissible evidence related to his claim that Defendant failed to supervise, train, instruct, monitor and screen its employees or failed to protect Aiello from negligent, reckless, intentional or tortious acts. The Court notes that arguably Plaintiff has abandoned this claim by completely failing to develop the factual record with respect to it. *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (*citing Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (collecting cases)); *see also*, *Spencer v. Ellsworth*, No. 09civ.3773, 2011 WL 1775963, at *7 (S.D.N.Y. May 10,2011) (finding that Plaintiff had abandoned certain claims as he "has not substantiated any of these claims and did not attempt to substantiate them in response to the motion for summary judgment."); *Schlenger v. Fidelity Employer Servs. Co.*, LLC, Np.09-cv-3986, 2011 WL 1236156, at *23 (S.D.N.Y. March 31, 2011) ("Plaintiff did not address Count Four in her Opposition to MetLife's Motion for Summary Judgment, and on this basis alone, those claims are deemed abandoned and summary judgment could be granted in MetLife's favor").

Even if Plaintiff had not abandoned such claims there is literally no evidence in the record demonstrating that Defendant failed to supervise, train, instruct its employees or failed to protect Aiello from negligent, reckless, intentional or tortious acts. At the summary judgment stage, plaintiffs are required to present admissible evidence in support of their allegations and allegations alone are not sufficient to defeat summary judgment. *Welch-Rubin*, 2004 WL 2472280, at *1. Accordingly, the Court finds that it does not need to address the many arguments Defendant made in its memorandum of law in support of its motion to dismiss regarding Plaintiff's negligence claims including its argument that summary judgment should be granted as Connecticut does not recognized a negligence cause of action in the course of continued employment and its argument that the Hospital did not owe Aiello nor breach any duty. Since Plaintiff has failed to present any evidence beyond his conclusory allegations in the unverified amended complaint, Defendant's motion for summary judgment as to Plaintiff's negligence claims are granted.

## Conclusion

Based upon the above reasoning, the Defendant's [Doc. #46] motion for summary judgment is GRANTED and all of Plaintiff's claims have been accordingly dismissed.

**IT IS SO ORDERED.**

_____/s/_____

**Hon. Vanessa L. Bryant**

**United States District Judge**

**Dated at Hartford, Connecticut: August 8, 2011**